139 So. 100
ALLGOOD v. FIRST NAT. BANK OF PIEDMONT.

7 Div. 7.

Supreme Court of Alabama.

Dec. 17, 1931.

Rehearing Denied Jan. 21, 1932.

Bibb, Field & Woolf, of Anniston, and Hugh White, of Montgomery, for appellant.

170

Merrill, Jones & Whiteside, of Anniston, for appellee.

BROWN, J.

On September 28, 1925, A. S. Edwards, who was then engaged in the business of selling automobiles, trucks, tractors, and their parts and accessories at Piedmont, Ala., became in-debted to J. P. Allgood, Jr., now deceased, in the sum of $4,500, for money advanced to said Edwards and used in said business, and, to secure the payment of the same, executed to said Allgood a mortgage covering office fix-tures, machinery, and tools, not constituting a part of his stock kept for sale, and also his "entire stock of Ford automobile and Ford-son tractor parts now (then) situated in the parts stock room," then occupied and used by the mortgagor, and, as the mortgage on its face shows, constituting a part of his stock in trade.

The mortgage stipulated: "It is understood and agreed that the mortgagor herein shall keep said stock up to at least the net amount of $3,000.00, invoice price and may sell such Ford Automobile and Fordson Tractor parts out of his stock in the usual course of his business, and apply the receipts of such sales in the usual course of his business to the in-debtedness of said business, except that the sum of $200.00, Two Hundred Dollars, out of such proceeds shall be retained for and paid to the mortgagee herein every month. The first payment in said amount of $200.00 to be made on the first day of November, 1925, and continue until the entire indebtedness is paid."

Payments were made under this agreement from time to time up to October 8, 1929, re-ducing the indebtedness to approximately $2,-750, including interest.

Allgood's mortgage, soon after its execu-tion, was duly filed for record, and record-ed in the probate office of Calhoun county, Ala.

Some time before this controversy arose, Allgood died, leaving as the only distributees of his estate his wife and minor child, Joseph Allgood.

From about the 3d of April, 1925, said Ed-wards occupied a building belonging to the appellee, First National Bank of Piedmont, under a lease at a rental of $75 per month, and on October 8, 1929, Edwards was in ar-rears in the payment of rent for the months of July, August, and September, 1929.

From time to time the First National Bank of Piedmont advanced to Edwards money on notes and mortgages covering automobiles, constituting in part his stock in trade, and in this way Edwards became indebted to the bank in the sum of about $4,800, with the ar-rangement that, when automobiles covered by such mortgages were sold, the proceeds or a part thereof were to be applied to the in-debtedness due from Edwards to the bank. These mortgages, as a rule, were withheld from record, and the last, which was sub-sisting at the time Edwards went out of busi-ness, was not recorded until the 9th day of October, 1929.

On October 8th the directors of the bank discovered that Edwards was insolvent and in a failing condition, and the evidence goes to show that Sharp, the cashier of the bank, had previous notice or knowledge of such insolvency. Some of the directors, in the absence of Edwards and without his knowledge or consent, went to his place of business, directed his manager in charge to lock the doors through which automobiles were moved in and out of said building, and not to allow any of said automobiles to be moved therefrom, and on the following day Haslam, one of the directors, tagged all the automobiles in stock as property of the bank. This was done, so far as the evidence shows, without the authority or consent of Edwards. On the same day that the automobiles were so tagged by the officer of the bank, Mrs. Allgood, the appellant, who had been authorized to do so by Edwards, placed cards or tags on all the bins containing Ford automobile parts and Fordson tractor parts as her property, and had a complete inventory made thereof, and at this time, as the evidence shows, some of the bank directors were present and at least acquiesced in if they did not expressly consent thereto.

After Edwards had authorized Mrs. Allgood to take possession of the property, he executed and delivered to the bank a bill of sale to the automobiles claimed by the bank, and the automobile parts and accessories, stipulating therein that it was "subject to the landlord's lien for rent *and other liens now existing on the same.*" (Italics supplied.)

Thereafter the bank assumed possession of the automobiles and sold some of them, and retained possession of the others as its property, realizing on those sold several hundred dollars, but not sufficient to satisfy its debt due from Edwards.

The business of Edwards was purchased and taken over by the Evans Motor Company, a corporation formed for that purpose, and the automobile parts were sold to it through a joint bill of sale given by Mrs. Allgood and the bank, with a written agreement of the parties, Mrs. Allgood and the bank, that the proceeds thereof should be deposited in the First National Bank of Anniston and held by it until the right thereto was determined by agreement between Mrs. Allgood and the Piedmont bank, and, if they could not agree, until their rights thereto were adjudicated.

Thereafter, without any effort, so far as the evidence shows, to reach an agreement as to their rights, the First National Bank of Piedmont filed the bill in this case against Mrs. Allgood and the First National Bank of Anniston, claiming ownership of the money under the bill of sale given by Edwards, and alleging in the bill that the automobile parts were conveyed to it "for a valuable consideration."

After the filing of the bill, Edwards and Joseph Allgood, the minor, were brought in as parties, and the minor was represented by a guardian ad litem appointed by the court.

The case was thereafter brought to final hearing, and on submission the circuit court decreed that the complainant, First National Bank of Piedmont, was entitled to the proceeds of the sale in the hands of the First National Bank of Anniston, allowed the complainant solicitor's fee for filing and prosecuting the bill, and taxed the respondent, Mrs. Allgood, with the costs of the suit.

The evidence shows without dispute that the indebtedness due to Mrs. Allgood and her minor child was bona fide, that, at the time the mortgage was given to Allgood, Edwards was not insolvent, and that there was no actual fraud in the transaction culminating in the execution of the mortgage.

■ There is no evidence that there was any consideration passing to Edwards for the execution of said bill of sale, that any credit was given on his indebtedness to the bank, or that any part of said indebtedness was credited or abated. In fact, the complainant proved and claimed as due the full amount of its indebtedness less the proceeds of the sale of the automobiles. Therefore said bill of sale was, as to the rights of the distributees of Allgood, a mere nudum pactum. Richardson Bros. & Co. v. Fields, 124 Ala. 535, 26 So. 981. Moreover, the bill of sale under which appellee claims excepted existing liens on the property covered by it.

■ The effect of the transaction between Mrs. Allgood and Edwards prior to the execution of the bill of sale to the Bank of Piedmont, followed by the assumption of actual possession of the property by Mrs. Allgood, operated as a pledge of the property to the payment of the valid pre-existing debt due to her and her minor son, and this was a sufficient consideration to support said pledge. B. C. Bynum Merc. Co. et al. v. First Nat'l of Anniston, 187 Ala. 281, 65 So. 815; Alabama State Bank v. Barnes, 82 Ala. 607, 2 So. 349; American Pig Iron Storage Warrant Co. v. German, Ex'x, 126 Ala. 194, 28 So. 603, 85 Am. St. Rep. 21; 49 C. J. 907, § 29; Means v. Randall Bank, 146 U. S. 620, 13 S. Ct. 186, 36 L. Ed. 1107.

■ The right of the pledgee, however, was subordinate to the prior lien for rent in proportion the value of the property pledged bears to all of the property affected by said lien. 21 R. C. L. 652, § 17.

■ Under the facts of this case, we are not of opinion that solicitor's fees should be al-

lowed to the complainant for the filing of the bill and the prosecution of this suit. Code, § 10390, leaves the matter to the sound discretion of the court.

The judgment here is that the learned circuit court fell into error in awarding the money in the hands of the First National Bank of Anniston to the complainant, and that decree is reversed, and one here rendered awarding the said sum of money to the appellant, Mrs. J. P. Allgood, Jr., and Joseph Allgood, subject, however, to the payment out of said fund of such proportion of the unpaid rent due complainant· as said fund in the bank bears to the value of the property of Edwards taken over by the complainant, and, for the purpose of ascertaining the amount of said fund necessary to discharge the lien for rent on this ratio, the matter is referred to the register of the circuit court, who, after giving notice to the parties, will hear and execute such reference and report his action thereon to the circuit court for further proceedings. All other questions are reserved for consideration and decision by the circuit court, except that appellee is taxed with the costs of this appeal.

Reversed, rendered, and remanded.

### On Rehearing.

The appellee insists, among other things, that the value of the property covered by the Allgood mortgage which appellant has received should be taken into account by the register in apportioning the claim for rent ratably on the funds and property covered by the lien. We are of opinion that this contention should be granted, and the decree of reference is therefore modified, in this respect, and the register is ordered to ascertain the amount of rent due and owing to appellee; that the register also ascertain the value of the property received or taken over by appellee from said Edwards, and which was covered by the lien for rent, and also ascertain the amount of money received by appellant from the sale of the fixtures and other property, and which was covered by her mortgage and the rent lien, and apportion the rent against the funds of each of said two named parties ratably, and to that and each of said two funds and property is charged ratably with the payment of said rent claim; that the· entire amount due for rent is charged against all the property taken over by or decreed to the said appellant and appellee; and the interest of each of said parties in said funds must contribute ratably to the payment thereof as above directed.

.· The application is otherwise overruled.

ANDERSON, C. J.,· and THOMAS and KNIGHT, JJ., concur.